## Lehman Estate

*John McCrea*, for estate.

*Hermas L. Weary*, for Commonwealth.

JACOBS, J., December 13, 1956.—William H. Lehman, Sr., a resident of Cumberland County, died February 26, 1922. Decedent left a will with a codicil, both of which were probated March 1, 1922. Letters testamentary were issued to William H. Lehman, Jr., the executor named in the will. By his will, testator devised and bequeathed all of his property, real and personal, to his executor in trust for the life of a son, Samuel Elmer Lehman. Upon the death of Samuel Elmer Lehman, the remainder was devised and bequeathed to testator's other children. The codicil authorized the executor, in his discretion, to sell the real estate of decedent during the lifetime of the life tenant. Upon the death of the life tenant the executor was directed to sell the real estate of decedent.

The entire estate of decedent consisted of real estate appraised for inheritance tax purposes at $7,050 and personal property appraised for inheritance tax purposes at $355.89. On May 29, 1922, the executor paid transfer inheritance tax on the life estate only, having

elected to postpone payment of transfer inheritance tax on the remainder until the death of the life beneficiary.

The life beneficiary, Samuel Elmer Lehman, died on March 28, 1951, and on November 2, 1951, the executor conveyed the real estate of decedent to Carl W. Kelso, said deed being recorded in the recorder's office in and for Cumberland County on November 3, 1951, in Deed Book "W", vol. 14, p. 71.

On December 14, 1951, the executor filed a form known as RCRI-33-100M-3-49 with the register of wills in Cumberland County. This form listed the estate of decedent as consisting of real estate situate in Southampton Township, Cumberland County, containing 100 acres, estimated by the executor to have a market value of $10,000, and personal property having an estimated value of $5,876.08. The inheritance tax appraiser of the Commonwealth of Pennsylvania made his appraisal on the same form fixing the value of the real estate at $11,000, and the value of the personal property at $6,008.88, making a total appraised value of $17,008.88. This form was endorsed "Remainder Appraisement."

The RCRI form also contained a copy of the 1922 appraisement and deductions showing the computation of the life estate and the value of the remainder estate based on those figures, such value being $2,984.04. The register of wills in error, on December 21, 1951, mailed the executor a notice stating that the value of the remainder interest on which tax was to be paid was $2,984.04. On January 3, 1952, the executor paid a two percent transfer inheritance tax on $2,984.04, and on the same date the register of wills of Cumberland County issued an official receipt to the executor showing payment of transfer inheritance tax on the estate of W. H. Lehman, Sr., in full.

The first and final account of the executor was confirmed and statement of proposed distribution ordered by the Orphans' Court of Cumberland County on March 4, 1952. Said account claimed credit for the payment of inheritance tax in the amount of $58.68. The account and statement of proposed distribution were advertised in accordance with the rules of court and no exceptions were filed thereto by the Commonwealth of Pennsylvania. Shortly thereafter distribution of the balance in the hands of the executor was made to the various distributees and releases taken. In his account and statement of proposed distribution, the executor showed no real estate in his hands, but accounted for proceeds of the sale of real estate in the amount of $11,500, being the proceeds of the sale of the real estate conveyed to Carl W. Kelso on November 2, 1951.

On March 3, 1955, a certificate of nonpayment of inheritance tax was filed in the Court of Common Pleas of Cumberland County to no. 405, May term, 1955, by the Commonwealth of Pennsylvania, against the estate of William H. Lehman, Sr., and Carl W. Kelso, purchaser, in the sum of $280.50 with interest from March 28, 1951, being the date of the death of the life tenant. The amount claimed by the Commonwealth of Pennsylvania is the tax on its appraisal of $17,-008.88, less the amount of tax paid on the incorrect appraisal sent by the register of wills to the executor. There has been no objection to the computation of this tax and it is admitted that if the Commonwealth is entitled to collect any tax this is the correct amount.

On August 23, 1955, the executor of the will of William H. Lehman, Sr., deceased, filed a petition in this court to strike off the certificate of nonpayment and a rule to show cause was issued against the Commonwealth of Pennsylvania, to which rule an answer was filed by the Commonwealth.

Section 3 of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2304, provides that the tax on a remainder interest is not payable until the remainderman comes into actual possession after the life estate has terminated and that: "the tax shall be assessed on the value of the estate at the time of the payment of the tax". The appraised value of the estate of William H. Lehman, Sr., at the time of the death of the life tenant, was $17,008.88.

The executor raised the point that an equitable conversion of the real estate had occurred and that therefore the lien of inheritance taxes attached to the fund arising from the sale of the real estate and not to the real estate. This position was abandoned by the executor in his supplemental brief in view of the case of Shugars v. Chamberlain Amusements Enterprises, 284 Pa. 200, in which Justice Kephart decided that a discretionary power to convert real estate in a will does not create a conversion until the time of sale. It might be well to note that the codicil contains a direction to sell after the death of the life beneficiary. However, any conversion created by the codicil could not take effect at the earliest until the death of the life tenant. Under section 3 of The Transfer Inheritance Act of 1919, 72 PS §2304, cited above, covering the taxation of remainder interests, and the ruling in Shugars v. Chamberlain, cited above, the lien of the tax on real estate attaches at the death of testator. Therefore, the lien of this tax which had attached prior to the death of the life tenant would not be divested by a conversion occurring on the death of the life tenant or later.

The executor states two other reasons why he feels that the certificate of nonpayment should be stricken off. In the first place, he claims that the Commonwealth is estopped by the receipt given by the register of wills

showing payment of the tax on the remainder interest in full. In the second place, he claims that the Commonwealth is barred from claiming this inheritance tax because it did not file exceptions to the account and statement of proposed distribution.

We will first consider the effect of the confirmation of the account.

The Commonwealth's claim is filed under the provisions of section 39 of the Transfer Inheritance Tax Act of 1919, 72 PS §2443, which provides inter alia as follows:

"The lien of all taxes imposed by this Act shall continue until the tax is settled and satisfied, and shall be limited to the property chargeable therewith. All such taxes shall be sued for within five years after they are due; otherwise they shall be presumed to have been paid and cease to be a lien as against any purchasers of real estate: Provided, however, At any time within said five year period, if the inheritance taxes on the realty appraised are not paid, the Department of Revenue shall have power to file a certificate, under its seal, certifying to such non-payment, which when filed in the prothonotary's office of the county where such real estate is situated, shall become a lien against decedent's real estate for a further period of five years from the date of such filing, and such lien shall be indexed in the judgment index in the name of the decedent as defendant."

As was noted above, under section 3 of said act, 72 PS §2304, the tax on a remainder interest is not payable until the remainderman comes into actual possession of the estate. The Commonwealth's claim under section 39, in the form of a certificate of non-payment of inheritance tax extends the lien against decedent's real estate only. Although the real estate of decedent was mentioned in the executor's account,

he charged himself only with the proceeds of the sale of the same. The real estate was not an asset adjudicated by the court when the account was confirmed and statement of distribution ordered. Since the Commonwealth has made no claim against the executor personally or attempted to follow the personal property distributed, we need not decide what, if any, effect the confirmation of the account has had on the Commonwealth's claim. There is no merit to the contention of the executor that the Commonwealth is barred by the confirmation of the account because at best the account is controlling only as to assets contained therein. It would have no bearing on assets not adjudicated in this accounting.

Section 49 (*d*) of the Fiduciaries Act of June 7, 1917, P. L. 447, which applies to estates of decedents dying prior to January 1, 1950, states very clearly the limitation on the bar created by judicial audit of an account in the following language:

"No creditor of a decedent who shall neglect or refuse to present his claim at the audit of the account of the executor or administrator . . . *shall be entitled to receive any share of the assets distributed in pursuance of such audit.*" (Italics supplied.)

The Fiduciaries Act of 1917 requires creditors' claims to be presented to the personal representative. The claims specifically meant are claims not of record. The holder of an existing lien can elect whether or not to make any claim to the personal representative. If, as here, the Commonwealth elects to enforce its lien against the real estate and not make a claim to the executor, its lien will not be discharged by such action. Existing liens are not included in the class of claims which must be presented. It would certainly not be contended that the lien of a judgment existing prior

to a decedent's death was discharged by the failure of the judgment creditor to present a claim to the personal representative under the 1917 Act. Nor is the long-existing lien of the Commonwealth discharged by such failure.

We need not decide whether or not the Commonwealth can be estopped by a receipt given by the register of wills because the executor and the purchaser have not met several of the required elements of estoppel. In order to effectively raise the defense of estoppel, it is necessary that the person raising the same must have relied on the other party's representation and been substantially injured by so doing: Schwab v. Edge (No. 1), 214 Pa. 602. The receipt on which the executor and the purchaser rely was given by the register of wills on January 3, 1952. It is impossible for the purchaser to say that he relied on that receipt when he purchased the real estate two months prior thereto, to wit, on November 2, 1951. The executor can hardly say that he has relied on this receipt when he himself filed his estimate of the value of this property on December 14, 1951. These estimates of the value of the property were greatly in excess of the appraisal set forth by the register in the notice which he sent to the executor on December 21, 1951. It, therefore, must have been obvious to the executor that an error had been made. In addition, since the claim of the Commonwealth is against the real estate only and not against the executor personally, the record does not show in any way that he has been injured.

And now, December 13, 1956, at 2:30 p.m., the rule heretofore granted on the Secretary of Revenue of the Commonwealth of Pennsylvania to show cause why the certificate of nonpayment of inheritance tax should not be stricken off is dismissed. An exception is noted for the executor.